IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| In re: § § **NEWSTREAM HOTEL PARTNERS – LIT, LLC**[1] § § § **Debtor.** § | | Case No. 21-40561 _____ Chapter 11 |

## DECLARATION OF TIMOTHY NYSTROM IN SUPPORT OF DEBTOR'S CHAPTER 11 PETITION AND REQUESTS FOR FIRST DAY RELIEF

I, Timothy Nystrom, pursuant to 28 U.S.C. § 1746, hereby declare that the following is true to the best of my knowledge, information, and belief:

1. I am the Manager of Newstream Hotels & Hospitality LLC ("**Newstream Hotels**"), which is the Manager of Newstream Hotel Equity Partners – LIT, LLC ("**Equity Partners**"), the Managing Member of Newstream Hotel Partners – LIT, LLC ("**Newstream LIT**" or "**Debtor**").

2. I am familiar with the day-to-day operations, business, and financial affairs of the Debtor.

3. I submit this declaration (the "**Declaration**") to assist the Court and other parties in interest in understanding the circumstances that compelled the commencement of this Chapter 11 bankruptcy case (the "**Chapter 11 Case**") and in support of the (i) Debtor's voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (the "**Bankruptcy Code**") filed on the date hereof (the "**Petition Date**") and (ii) the relief, in the form of motions and applications, that the Debtor has requested of the Court (the "**First Day Pleadings**").

---

[1] The Debtor in this chapter 11 case is Newstream Hotel Partners – LIT LLC, and the last four digits of its federal tax identification number is 0095. The location of the Debtor's corporate headquarters and services address is 311 South Oak Street, Suite 250, Roanoke, TX 76262.

4. Except as otherwise indicated, all facts set forth in this Declaration are based upon my personal knowledge, my discussions with other employees and representatives of the Debtor, my review of relevant documents, or my opinion based upon my experience and knowledge of the Debtor's operations and financial condition. If I were called to testify, I would testify competently to the facts set forth in this Declaration. I am authorized to submit this Declaration on behalf of the Debtor.

5. This Declaration is intended to provide a summary overview of the Debtor's business and this Chapter 11 Case. Sections I through III provide a description of the Debtor's business, history, and organizational structure, prepetition indebtedness, and the circumstances giving rise to the commencement of this Chapter 11 Case. Part IV summarizes the First Day Pleadings and the relief they seek, which the Debtor believes are crucial to its successful reorganization.

## I. THE DEBTOR

### A. The Debtor's Business

6. The Debtor owns a full-service hotel, the Four Points Hotel by Sheraton, located at 925 South University Avenue, Little Rock, Arkansas 72204 (the "**Property**"), and conveniently located near the University of Arkansas at Little Rock and Arkansas Children's Hospital. The Property features 263 guest rooms, a restaurant, bar, and 13,786 square feet of meeting and event space, as well as an outdoor pool with waterfall and splash pad, fitness center, business center, and other amenities consistent with a midscale full-service hotel. Originally opened as a Hilton hotel in 1978, the Property includes approximately $28 million in recent renovations and is in excellent physical condition. Debtor purchased the Property in 2018 for approximately $17,002,000.00. Below is a photograph of the Property:



**B.     The Debtor's Corporate Structure**

7.      The Debtor is a single-member limited liability company formed in 2018. The Debtor's sole member is Newstream Hotel Equity Partners – LIT, LLC, which is managed by Newstream Hotels & Hospitality LLC ("**Newstream Manager**") and owned by approximately seventy-six (76) separate equity interest holders. Additionally, the Debtor has one preferred member, RealtyShares 348, LLC ("**RealtyShares**" or the "**Preferred Member**").

**II.    CERTAIN PREPETITION SECURED INDEBTEDNESS[2]**

**A.     Prepetition Secured Lender**

8.      On or about August 23, 2018, the Debtor entered into that certain Loan Agreement dated August 23, 2018 by and between Debtor as "Borrower" and UC Funding, LLC ("**UC Funding**") as "Lender" (the "**Loan Agreement**") to facilitate its purchase of the Property. In

---

[2] The recitals contained herein are solely for informational purposes and are not meant to be admissions as to the validity, perfection, or priority of any of the lenders' loans or liens. Each of the recitals contained herein are expressly qualified by the terms and provisions of each of the documents, and the subsequent acts taken (or not taken) by the applicable prepetition lender.

3

connection with the Loan Agreement, the Debtor also executed that certain Promissory Note (the "**Note**"), Mortgage, Assignment of Leases and Rents, Security Agreement, and Fixture Filing (the "**Mortgage**"), Assignment of Leases and Rents (the "**AOLR**") and other collateral loan documents (collectively with the Loan Agreement, Note, Mortgage, and AOLR, the "**Loan Documents**"). Pursuant to the Loan Documents, the Debtor borrowed $14,000,000.00. The amounts borrowed pursuant to the Loan Documents are secured by liens on substantially all of the Debtor's assets. On or around August 24, 2018, UC Funding executed an Assignment of Recorded Documents (the "**Assignment**"), which purportedly assigned the Note and rights under the Loan Documents to UC Four Points Little Rock Holder, LLC ("**UC Little Rock**" or "**Prepetition Secured Lender**").

9. As of April 1, 2020, UC Four Points alleged that Debtor was liable under the Loan Documents in an amount of $14,605,098.53, including reserves, fees, costs, and interest, which the Debtor disputes.

**B.    Obligations to Unsecured Creditors and Preferred Member**

10. As of the Petition Date, the total outstanding obligations due and owing to vendors, suppliers, and other general unsecured creditors are approximately $309,697.00.

11. RealtyShares is a preferred member of the Debtor and is entitled to certain preferred payments and returns, as set for in the Debtor's Operating Agreement, in exchange for its capital contribution of $2,250,000.00.

**III.    KEY EVENTS LEADING TO DEBTOR'S CHAPTER 11 FILING**

12. Following its purchase of the Property in 2018, the Debtor's business has not generated sufficient revenue to satisfy monthly debt service payments to the Prepetition Secured Lender. Also contributing to the Debtor's financial struggles was its former management company, which proved to be ineffective in forecasting revenues and expenses and was not responsible with

the amount of overhead it charged to the Property. As a result, the Debtor fired its former management company and has since sued that management company for its mismanagement of the Property.

13. The Debtor's financial struggles were exasperated by the Prepetition Secured Lender unilaterally determining in the summer of 2019 that it would no longer allow the Debtor to use its interest reserve or other reserves to make the monthly debt service payments.

14. Finally, after the Debtor hired a new management company, and was in the process of moving forward financially, the COVID-19 pandemic started. The COVID-19 pandemic has negatively impacted many industries and business, with the hospitality industry being particularly hard-hit. Specifically, the pandemic caused a sharp decline in tourism, the elimination of essentially all business travel, and the cancelation of all conventions. The various state and local lockdowns, travel restrictions, social distancing measures, and the public's general reluctance to travel during this time period resulted in a dramatic downturn in the Debtor's business.

15. Debtor is hopeful for and anticipates a return to pre-pandemic occupancy levels in the coming months, in light of increased vaccine availability and the public's desire to travel again, and seeks to reorganize its debt and operations in Chapter 11 to ensure sustained viability of the business.

### IV. SUMMARY OF FIRST DAY PLEADINGS

16. Concurrently with the filing of the voluntary petition, the Debtor has filed, for the Court's approval, a number of First Day Pleadings, which the Debtor believes are necessary to enable it to operate in Chapter 11 with a minimum of disruption and loss of productivity. The Debtor respectfully requests that the each of the First Day Pleadings be granted, as they are a critical element to facilitating the Debtor's smooth and orderly operations with minimal disruption

during the pendency of its Chapter 11 case. A description of the relief requested and the facts supporting each of the First Day Pleadings is set forth below.

### A. Cash Collateral

17. The Debtor's *Emergency Motion for Interim and Final Orders (I) Authorizing the Use of Cash Collateral, (II) Granting Adequate Protection to the Prepetition Secured Lender, (III) Scheduling a Final Hearing Pursuant to Bankruptcy Rule 4001(b), and (IV) Granting Related Relief* (the "**Cash Collateral Motion**") seeks immediate access to cash to ensure that the Debtor is able to continue operating during this case and to preserve the value of its estate for the benefit of all parties in interest, including the Prepetition Secured Lender. In addition to certain cash in certain deposit accounts being subject to the Prepetition Secured Lender's liens, section 363 of the Bankruptcy Code also provides that cash generated from operations of the hotel are likely cash collateral (the "**Restricted Cash**").[3] The Debtor has determined that the Restricted Cash (and to the extent necessary the Unrestricted Cash), will be sufficient to operate its business and continue to pay its debts as they come due.

18. Without immediate authority to use its cash according to these terms, the Debtor will be unable to satisfy trade payables incurred in the ordinary course of business, preserve and maximize the value of its estate, or administer this Chapter 11 case, which would cause immediate and irreparable harm to the value of the Debtor's estate to the detriment of all stakeholders. Conversely, immediate access to Cash Collateral will allow the Debtor to operate as it did prepetition and will maintain (and where necessary restore) the confidence of its vendors, customers, employees, and other stakeholders at this critical stage of its restructuring. Therefore,

---

[3] The Debtor notes that prior to the Petition Date, it obtained certain amounts of cash related to a grant and PPP loans, which are not subject to the Prepetition Secured Lender's liens and are not cash collateral (the "**Unrestricted Cash**").

the use of Cash Collateral pursuant to the terms of the Interim Order is essential and necessary to the Debtor's ability to minimize disruptions and avoid irreparable harm to its business.

19. UC Four Points Little Rock Holder, LLC ("**UC Four Points**" or "**Prepetition Secured Lender**") has a mailing address of 745 Boylston Street, Suite 502, Boston, Massachusetts 02116, and is the only creditor with a potential interest in the cash collateral described in the Cash Collateral Motion. UC Four Points is represented by its litigation counsel, Eric Pinker and Sara Chelette of Lynn Pinker Hurst & Schwegmann, with an address of 2100 Ross Avenue, Suite 2700, Dallas, Texas 75201, and telephone number (214) 981-3800.

20. My understanding is that my counsel has exchanged communications with counsel for UC Four Points regarding the Cash Collateral Motion in efforts to reach an agreement prior to the Petition Date.

21. I have reviewed the thirteen-week budget attached to the Cash Collateral Motion, and the budget projections included therein are based upon actual past expenses incurred or anticipated by the Debtor, which are necessary for continued operation of the hotel.

22. The Debtor has proposed adequate protection for the Debtor's use of the Cash Collateral in the Cash Collateral Motion, including replacement liens and first priority security interests in the Debtor's presently owned or hereafter acquired property and assets, whether such property and assets were acquired before or after the Petition Date, of any kind or nature, whether real or personal, tangible or intangible, wherever located (including, without limitation, first priority liens on any cash held in the Debtor's bank accounts), and the proceeds and products thereof (the "**Adequate Protection Liens**") junior only to the Carve-Out, but excluding any causes of action that could be brought under §§ 544–548 of the Bankruptcy Code or any applicable state fraudulent-transfer statute or similar statute, granted only to the extent the prepetition liens of UC

Four Points are valid, enforceable, non-avoidable liens and security interests that were perfected prior to the Petition Date (or perfected after the Petition Date to the extent permitted by section 546(b) of the Bankruptcy Code), which are not subject to avoidance, reduction, disallowance, impairment, or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law.

### B.　Employee Wage Motion

23.　The Debtor's *Emergency Motion for an Order Authorizing the Debtor to Pay Prepetition Wages, Compensation, and Employee Benefits* (the "**Wage Motion**") seeks entry of an order (i) authorizing, but not requiring, the Debtor to (a) pay, in its sole discretion, wage, salary and commission obligations, payroll taxes, and costs incident to the foregoing and (b) maintain and continue to honor its practices, programs, and policies for its employees as they were prior on the Petition Date, and as they may be modified, amended, or supplemented from time to time in the ordinary course of business, and (ii) authorizing the Debtor's bank and financial institutions to receive, honor, process, and pay any and all checks or electronic funds transfers drawn on the Debtor's accounts in satisfaction of any such obligations.

24.　The Debtor has an agreement with its management company, InnVentures, LLC ("**InnVentures, LLC**"), whereby the Debtor employs sixteen (16) employees of an affiliate of InnVentures, LLC, IVI Hotel Management of Washington, Inc. Five (5) of the employees work full time on a salaried basis, and eleven (11) are paid on an hourly basis with a mix of full time and part time employees (collectively, the "**Debtor Employees**").

25.　The pre-petition wages of each individual Debtor Employee are equal to or less than the priority wage allowance of $13,650 as allowed by Section 507(a)(4) of the Bankruptcy Code. **Exhibit A** to the Wage Motion is a true and correct copy of Debtor's estimated pre-petition gross wages and commissions.

26. The Debtor Employees are paid biweekly on Fridays, in arrears for the pay period ending the prior Saturday. Payroll for the Debtor Employees is due and owing on April 30, 2021 for the pay period beginning April 11, 2021 and ending April 24, 2021, including pre- and post-petition amounts.

27. As of the Petition Date, the Debtor has obligations relating to Pre-Petition Wages for: (a) deductions taken from Employees' paychecks in order to make payments on behalf of the Employees, including for child support obligations ("**Deductions**"); and (b) withholdings from Employees' paychecks on account of various federal, state and local income, FICA, Medicare and other taxes for remittance to the appropriate federal, state or local taxing authorities ("**Withholdings**"). The Debtor withholds the necessary and proper amounts for various federal, state and local income, FICA, Medicare and other taxes and remits payment when due under applicable law. Amounts for Deductions and Withholdings are included in the Debtor's request for payment.

### C. Cash Management

28. Pursuant to the *Emergency Motion (I) Authorizing the Debtor to Continue to Operate its Cash Management System, and (II) Authorizing the Debtor to Maintain Existing Business Forms* ("**Cash Management Motion**"), the Debtor seeks to continue to operate its Cash Management System and obtain certain limited relief from the United States Trustee's operating guidelines for debtors in possession.

29. In the ordinary course of business, the Debtor conducts transactions by debit, wire, automatic clearing house ("**ACH**") and other similar methods. Like many hotels, the Debtor receives significantly all of its revenue from credit card sales. More specifically, such sales are transferred from the Debtor's credit card processors and third party servicers (such as Expedia).

Those transfers are done via ACH or wire transfer into the Depository Account. The Debtor then transfers amounts from the Depository Account to the Operating Account to pay certain vendors.

30. In the ordinary course, the Debtor is subject to certain service charges and other fees, costs, and expenses with respect to the Bank Accounts (collectively, the "**Bank Fees**").

31. Because of the disruption that would result if the Debtor was forced to close its existing bank accounts, I believe that it is critical that the existing Cash Management System remain in place.

### D. Customer Programs Motion

32. Pursuant to Debtor's *Emergency Motion tor Entry of an Order Authorizing the Debtor (I) to Maintain and Administer Existing Customer Programs and Honor Certain Related Prepetition Obligations and (II) to Honor and Use Prepetition Customer Deposits* (the "**Customer Programs Motion**"), the Debtor seeks to continue its participation in the Marriott Bonvoy customer loyalty programs (the "**Customer Programs**"), honor certain prepetition obligations related thereto, and honor and use existing pre-petition customer deposits.

33. Benefits of the Marriott Bonvoy programs include complimentary rentals based on a point-based system, complimentary internet access, special member rates, mobile check-in and late check-out, reservation guarantees, exclusive member areas, complimentary meals, and other amenities. Marriott also offer gifts cards, available at participating properties, online at gifts.marriott.com, and through select third parties, which may be redeemed for goods and services at participating Marriott properties worldwide.

34. Maintaining and honoring Customer Programs and relating obligations is imperative to the Debtor's continuing operations. The Debtor conducts business in a highly competitive market, where the quality of customer experience distinguishes Marriott family hotels

from competing hotels, and the Debtor relies heavily on the Customer Programs and the Sheraton name to ensure a steady stream of new and existing customers. The continuation of the Customer Programs in the ordinary course, including the ability to honor pre-paid obligations, is necessary to the fair and responsible administration of this case and to maximize the value of the bankruptcy estate.

35. I believe that the relief requested in the First Day Pleadings is in the best interests of the Debtor's estate, its creditors, and all other parties in interest, and will enable the Debtor to continue to maintain its property in Chapter 11.

Executed on April 16, 2021.

                                                Timothy Nystrom