A IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | Case No. 21-40561 |
| **NEWSTREAM HOTEL PARTNERS –** | § | |
| **LIT LLC** | § | |
| | § | Chapter 11 |
| Debtor. | § | |

**DEBTOR'S MOTION TO RENEW PROPERTY INSURANCE POLICY AND APPROVE POST-PETITION FINANCING PURSUANT TO 11 U.S.C. § 364(b)**

**14-DAY NEGATIVE NOTICE – LBR 4001(a):**

**Your rights may be affected by the relief sought in this pleading. You should read this pleading carefully and discuss it with your attorney if you have one in this bankruptcy case. If you oppose the relief sought by this pleading, you must file a written objection, explaining the factual and/or legal basis for opposing the relief.**

**No hearing will be conducted on this Motion unless a written objection is filed with the Clerk of the United States Bankruptcy Court and served upon the party filing this pleading _WITHIN FOURTEEN (14) DAYS FROM THE DATE OF SERVICE_ shown in the certificate of service unless the Court shortens or extends the time for filing such objection. If no objection is timely served and filed, this pleading shall be deemed to be unopposed, and the Court may enter an order granting the relief sought. If an objection is filed and served in a timely manner, the Court will thereafter set a hearing with appropriate notice. If you fail to appear at the hearing, your objection may be stricken. The Court reserves the right to set a hearing on any matter.**

**EXPEDITED RELIEF HAS BEEN REQUESTED. IF THE COURT CONSIDERS THE MOTION ON AN EXPEDITED BASIS, THEN YOU WILL HAVE LESS THAN 14 DAYS TO ANSWER. IF YOU OBJECT TO THE REQUESTED RELIEF OR IF YOU BELIEVE THAT THE EXPEDITED CONSIDERATION IS NOT WARRANTED, YOU SHOULD FILE AN IMMEDIATE RESPONSE.**

TO THE HONORABLE BRENDA T. RHOADES,
UNITED STATES BANKRUPTCY JUDGE:

Newstream Hotel Partners – LIT, LLC ("**Newstream LIT**" or "**Debtor**"), the debtor and

debtor-in-possession in the above-referenced bankruptcy case, hereby submits this motion (the "**Insurance Finance Motion**") and respectfully represents as follows:

## Expedited Relief Requested

1. Pursuant to section 364(b) of the Bankruptcy Code,[1] Rule 4001(c) of the Federal Rules of Bankruptcy Procedure ("**Bankruptcy Rules**"), and Local Bankruptcy Rule 4001-1, the Debtor requests (a) authority to renew its 2020 Property Insurance Policy (as defined herein) for the period of October 8, 2021 through October 8, 2022; (b) authority to obtain post-petition financing in connection with the renewal of its Property Insurance Policy, as set forth herein; and (c) for related relief.

2. Concurrently with this Insurance Finance Motion, the Debtors request a shortened notice period and an expedited hearing, as the 2020 Property Insurance Policy expires on October 8, 2021, which is less than fourteen (14) days following the filing of this motion. Such expedited consideration is necessary to ensure insurance coverage remains in place to protect and preserve the primary assets of both bankruptcy estates. The Debtors request a hearing on or before October 8, 2021.

## Jurisdiction and Venue

3. The Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

4. Venue in this Court is proper pursuant to 28 U.S.C. § 1408.

## Background

### A. Debtor and Operations

5. On April 16, 2021 (the "**Petition Date**"), the Debtor filed a voluntary petition for

---

[1] 11 U.S.C. §§ 101 *et. seq.*

**DEBTOR'S MOTION TO RENEW PROPERTY INSURANCE POLICY AND APPROVE
POST-PETITION FINANCING PURSUANT TO 11 U.S.C. § 364(b)**                                         **PAGE 2**

bankruptcy under Chapter 11 of the Bankruptcy Code. The Debtor continues to operate its business as a debtor-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. No trustee, examiner, or official committee of unsecured creditors has been appointed.

6.      The Debtor owns a full-service hotel, the Four Points Hotel by Sheraton, located at 925 South University Avenue, Little Rock, Arkansas 72204 (the "**Property**"), and conveniently located near the University of Arkansas at Little Rock and Arkansas Children's Hospital. The Property features 263 guest rooms, a restaurant, bar, and 13,786 square feet of meeting and event space, as well as an outdoor pool with waterfall and splash pad, fitness center, business center, and other amenities consistent with a midscale full-service hotel. Originally opened as a Hilton hotel in 1978, the Property includes approximately $28 million in recent renovations and is in excellent physical condition. Debtor purchased the Property in 2018 for approximately $17,002,000.00.

7.      Additional information regarding the Debtor and its chapter 11 filing, including the Debtor's business operation, capital structure, financial condition, and the reasons for and objective of this chapter 11 case, is set forth in the Nystrom Declaration [Docket No. 3], incorporated herein by reference.[2]

8.      On April 22, 2021, the Debtor filed its *Motion for Order Authorizing the Debtor to Maintain Insurance Policies* [Docket No. 28] (the "**Insurance Motion**"), which was granted by the Court on May 5, 2021 [Docket No. 41].

B.      **The 2020 Property Insurance Policy**

9.      The Debtor is named as an additional insured and the Property is insured under a property casualty policy (the "**2020 Property Insurance Policy**"), effective from October 8, 2020

---

[2] Capitalized terms used but not otherwise defined in this Motion shall have the meaning ascribed to them in the Nystrom Declaration.

through October 8, 2021, in which the Property is bundled with the property owned by Newstream Hotel Partners – ABQ, L.P. ("**Newstream ABQ**")[3], for which the Debtor's manager, Newstream Hotels & Hospitality, LLC ("**Newstream H&H**," and collectively with Newstream LIT and Newstream ABQ, the "**Newstream Entities**")[4], is also the manager and General Partner. Newstream H&H financed the purchase of the 2020 Property Insurance Policy pursuant to a premium finance agreement (the "**2020 Premium Finance Agreement**") with FIRST Insurance Funding, a Division of Lake Forest Bank & Trust Company, N.A. ("**FIRST**"), which required nine (9) monthly payments of $8,086.40, due on the eighth day of each month, paid directly to FIRST by Newstream LIT and Newstream ABQ based on each entity's *pro rata* portion of the premiums financed, plus taxes and fees. Specifically, the 2020 Premium Finance Agreement provided for $87,850.00 in total premiums, taxes, and fees and $2,497.60 in finance charges, at an annual interest rate of 8.450%, of which $73,569.00 was attributable to the premiums associated with the Property owned by Newstream LIT.

10.    Debtor's Prepetition Secured Lender, UC Four Points Little Rock Holder, LLC ("**UC Four Points**"), is listed as an additional insured on the 2020 Property Insurance Policy, and proof of the same has been provided to UC Four Points.

11.    As of July 2020, and prior to the filing of bankruptcy cases by Newstream ABQ and Newstream H&H, all payments were made by Newstream LIT and Newstream ABQ under the 2020 Premium Finance Agreement, and no further amounts are owed by the Newstream Entities under the 2020 contracts.

---

[3] Newstream Hotel Partners – ABQ, L.P. is the debtor in Chapter 11 Case No. 21-41212, filed on August 30, 2021 and currently pending in the Bankruptcy Court for the Eastern District of Texas, Sherman Division.

[4] Newstream Hotels and Hospitality, LLC is the debtor in Chapter 11 Case No. 21-41213, filed on August 30, 2021 and currently pending in the Bankruptcy Court for the Eastern District of Texas, Sherman Division.

### C. The Proposed 2021 Property Insurance Policy

12. The Newstream Entities seek to renew their property insurance coverage under the terms set forth in **Exhibit A** (the "**Proposed 2021 Property Insurance Policy**"), which includes the bundling of insurance coverage for the properties owned and operated by Newstream LIT and Newstream ABQ (collectively, the "**Properties**"). Such bundling allows the Newstream Entities to insure the smaller Newstream ABQ property under the current circumstances.

13. Under the Proposed 2021 Property Insurance Policy, Newstream LIT and Newstream ABQ would pay a collective total annual insurance premium of $96,385.00 for insurance coverage effective from October 8, 2021 through October 8, 2022, covering each building, business personal property contained therein, and business income related to each, with extensions for flood, earth movement, water, wind, and other events, at the same or similar coverage amounts included in the existing 2020 Property Insurance Policy.[5] The insurance agent for the Newstream Entities anticipates additional fees and taxes associated with the policy to total between $3,000.00 and $4,000.00.

14. Notably, the required deductible for wind coverage for the Property in Arkansas increased from $100,000 to $500,000 for the same level of coverage.[6] Because the deductible required by the proposed policy as written would be difficult or impossible for Newstream LIT to fund on short notice, Newstream LIT seeks to buy down the deductible amount to $250,000.00, which would result in an additional premium amount of $20,753.00, plus associated taxes and fees, due to the insurer at policy inception, *attributable to the Newstream LIT Property only*.

---

[5] The percentages attributable to each property under the Proposed 2021 Property Insurance Policy as written are approximately 78% to Newstream LIT and 22% to Newstream ABQ.

[6] *See* **Exhibit A** at p. 6.

### D. The Proposed DIP Financing (2021 Premium Finance Agreement)

15. Newstream H&H, as manager for both Newstream LIT and Newstream ABQ, seeks to incur debt to purchase the Proposed 2021 Property Insurance Policy, pursuant to 11 U.S.C. § 364(c)(2), under which Newstream LIT and Newstream ABQ shall make *pro rata* payments directly to FIRST as administrative expenses as they come due, pursuant to 11 U.S.C. § 364(b) and in the ordinary course of their businesses.[7]

16. Specifically, Newstream H&H seeks to finance amounts due under the Proposed 2021 Property Insurance Policy under a finance agreement with FIRST (the "**Proposed 2021 Premium Finance Agreement**"), with terms similar to the 2020 Premium Finance Agreement.[8] While the total amount financed will depend on the finalized 2021 Property Insurance Policy, the Newstream Entities anticipate the terms of the Proposed 2021 Premium Finance Agreement to include an annual interest rate between 8.0% and 9.5%, a 20% down payment, and a collective finance cost of approximately $3,659.00.[9] Collectively, the Newstream Entities anticipate paying FIRST approximately $24,150.60 at loan inception, with approximately $96,602.40 financed and nine (9) monthly installment payments of approximately $11,140.12, commencing on November 8, 2021. With the additional buy down amount, the total anticipated cost of insurance plus financing is approximately $124,412.00, with $22,556.90 (18.1%) attributable to Newstream ABQ and $101,855.10 (81.9%) attributable to Newstream LIT.

---

[7] Debtor's counsel recognizes that such a payment arrangement creates administrative claims owed by Newstream ABQ and Newstream LIT to Newstream H&H, from which later conflict may arise. Should such a conflict arise, Debtor's counsel will not represent either Debtor in any contested matter involving such administrative claims created pursuant to any order granting the Insurance Funding Motion or relating to the financing described herein.

[8] The 2020 Property Premium Finance Agreement is attached hereto as **Exhibit B**.

[9] Estimated finance costs are based on a total policy cost of $120,753.00, inclusive of buy down amounts, fees, and taxes, a 20% down payment, and interest calculated using an annual interest rate of 9%. Such amounts shall be determined by and set forth in the final Proposed 2021 Premium Finance Agreement.

17. As collateral to secure the repayment of the total of payments, any late charges, attorney's fees and costs (the "**Indebtedness**") under the Proposed 2021 Premium Finance Agreement, Newstream H&H will grant FIRST a security interest in, among other things, the unearned premiums under the 2021 Property Insurance Policy, any credits generated by the 2021 Property Insurance Policy, dividend payments, and loss payments which reduce the unearned premium. The Proposed 2021 Premium Finance Agreement will provide that the loan terms are governed by the applicable federal law and Illinois law (to the extent not preempted by federal law). The Debtor anticipates security terms of the Proposed 2021 Premium Finance Agreement to mirror those in the 2020 Premium Finance Agreement, set forth below:

1. **SECURITY INTEREST.** INSURED/BORROWER ("Insured") grants and assigns FIRST Insurance Funding, A Division of Lake Forest Bank & Trust Company, N.A. ("LENDER") a first priority lien on and security interest in the financed policies and any additional premium required under the financed policies listed in the Schedule of Policies, including (a) all returned or unearned premiums, (b) all additional cash contributions or collateral amounts assessed by the insurance companies in relation to the financed policies and financed by LENDER hereunder, (c) any credits generated by the financed policies, (d) dividend payments, and (e) loss payments which reduce unearned premiums (collectively, the "Financed Policies"). If any circumstances exist in which premiums related to any Financed Policy could become fully earned in the event of loss, LENDER shall be named a loss-payee with respect to such policy.

*See* **Exhibit B**, 2020 Premium Finance Agreement.

18. Additional terms for the Proposed 2021 Premium Finance Agreement are contained in the *Motion to Renew Property Insurance Policy, Approve Post-Petition Financing Pursuant to 11 U.S.C. § 364(B) and (C), And Provide Adequate Protection to First Insurance Funding* filed in Case No. 21-41212 on September 30, 2021 [Case No. 21-41212, Docket No. 57], and in the 2021 Premium Finance Agreement, to be filed as a supplement to this Insurance Finance Motion.

19. The relief requested by this Motion is warranted and appropriate under the circumstances. The Debtor submits that authorization of the Proposed 2021 Premium Finance Agreement will ensure that Newstream H&H, Newstream ABQ, and Newstream LIT can continue necessary operations and will not prejudice the legitimate interests of creditors and other parties in interest, including secured creditors of Newstream LIT.

20. The Debtor will file final versions of both the Proposed 2021 Property Insurance Policy and the Proposed 2021 Premium Finance Agreement as supplements to this Insurance Finance Motion upon receipt by the Debtor and prior to any hearing on the Insurance Finance Motion.

## BASIS FOR RELIEF REQUESTED

### A. Payment of the Obligations Related to the Insurance Policies is Required by the Bankruptcy Code and U.S. Trustee.

21. The Debtor's insurance policies are essential to preserve the value of the Debtor's business, properties and assets. Not only are insurance policies likely required by various regulations, laws, and contracts that govern the Debtor's commercial activities, but section 1112(b)(4)(C) of the Bankruptcy Code provides that "failure to maintain appropriate insurance that poses a risk to the estate or to the public," is "cause" for mandatory conversion or dismissal of a chapter 11 case. *See* 11 U.S.C. § 1112(b)(4)(C). Moreover, the Operating Guidelines for Chapter 11 Cases of the Office of the United States Trustee also require debtors to maintain insurance coverage through the pendency of chapter 11 cases.

22. Courts routinely approve the request for the payment of insurance premiums similar to the relief requested in this Motion. *See, e.g., In re Alco Stores, Inc.*, Case No. 14-34941 (SGJ)(Bankr. N.D. Tex. Sept. 14, 2014)(authorizing debtors to continue to their prepetition insurance policies, make annual and monthly premium payments in the ordinary course of business, and maintain funding for certain insurance brokers); *In re Idearc Inc.*, Case No. 09-31828 (BJH)(Bankr. N.D. Tex. April 6, 2009)(same); *In re Pilgrim's Pride Corp.*, Case No. 08-45664 (DML)(Bankr. N.D. Tex. Dec. 3, 2008)(same); *In re Renaissance Hosp. Grand Prairie, Inc.,* Case No. 08-43775 (DML)(Bankr. N.D. Tex. Sept. 4, 2008)(same); *In re Home Interiors & Gifts, Inc.*,

Case No. 08-31961 (BJH)(Bankr. N.D. Tex. June 6, 2008)(same).

### B. Payments to Maintain the Insurance Policies are Ordinary-Course Transactions Authorized Pursuant to Section 363(c)(1) of the Bankruptcy Code.

23. The Debtor believes that payments made to maintain or renew its property insurance policy, as well as the payments of any obligations made in connection therewith, fall within the ordinary course of business and are therefore authorized pursuant to section 363(c)(1) of the Bankruptcy Code.

24. Section 363(c)(1) of the Bankruptcy Code authorizes the debtor in possession to "use property of the estate in the ordinary course of business without notice or a hearing." *See* 11 U.S.C. § 363(c)(1). The purpose of section 363(c)(1) is to provide a debtor in possession with the flexibility to engage in the ordinary transactions required to operate its business without unneeded oversight by its creditors or the court. *See Med. Malpractice Ins. Ass'n v. Hirsch (In re Lavigne)*, 114 F.3d 379, 384 (2d Cir. 1997); *Chaney v. Official Comm. of Unsec'd Creditors of Crytal Apparel, Inc. (In re Crystal Apparel, Inc.)*, 207 B.R. 406, 409 (S.D.N.Y. 1997).

25. Here, maintaining the insurance policies and honoring the obligations arising thereunder, including undertaking renewals of the insurance policies as they expire or entering into new insurance arrangements through any of the Debtor's insurance brokers, are the type of ordinary-course transactions contemplated by section 363(c)(1). Accordingly, section 363(c)(1) authorizes continuation of the insurance policies without this Court's approval.

### C. The Doctrine of Necessity Provides Support for Payment of the Obligations Related to the Insurance Policies.

26. As explained above, the Debtor believes that payments made to maintain the insurance policies, as well as any obligations related to the insurance policies, fall within the

ordinary course of business and are therefore authorized pursuance to section 363(c)(1) of the Bankruptcy Code. To the extent that any such actions do not constitute ordinary-course transactions, however, the Debtor requests the Court authorize the Debtor to continue payments for the insurance policies, pursuant to section 105(a), 363(b), and 503(b) of the Bankruptcy Code.

27.   Section 363(b) of the Bankruptcy Code provides: "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." *See* 11 U.S.C. § 363(b). Further, pursuant to section 1107(a) of the Bankruptcy Code, a debtor in possession has, among other things, the "implied duty of the debtor-in-possession to 'protect and preserve the estate, including an operating business' going-concern value.'" *In re CEI Roofing, Inc.*, 315 B.R. 50, 59 (Bankr. N.D. Tex. 2004)(*citing In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002)). Under section 105(a) of the Bankruptcy Code, "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). *See* 11 U.S.C. § 105(a).

28.   The Debtor's use of estate funds and/or cash collateral to pay obligations arising from the insurance policies is justified because such obligations are necessary costs of preserving the Debtor's estate. The insurance policies are essential to the Debtor's operations, as the Debtor would be exposed to significant liability if the insurance policies were allowed to lapse or terminate. Such exposure could detrimentally impact the Debtor's ability to reorganize. Furthermore, as explained above, the Bankruptcy Code and United States Trustee guidelines require maintenance of insurance.

    **D.**    **Financing of the Insurance Premiums is Necessary to the Debtor's Restructure and Authorized by the Bankruptcy Code**

29.   Section 364(b) Bankruptcy Code provides that "[t]he court, after notice and a

hearing, may authorize the trustee to obtain unsecured credit or to incur unsecured debt other than under subsection (a) of this section, allowable under section 503(b)(1) of this title as an administrative expense." *See* 11 U.S.C. § 364(b). An authorization of credit under 11 U.S.C. § 364(b) establishes a safe haven wherein a prospective lender receives assurance of an administrative priority. By its language, section 364(b) allows the court to authorize a debt that will be "allowable under section 503(b)(1) as an administrative expense." Although providing a guaranteed pathway to priority, section 364(b) imposes no negative restraint on the opportunity to establish an entitlement to priority under section 503(b)(1). Even when the debtor fails to secure prior authorization for a post-petition extension of credit outside the ordinary course of business, the lender may still file a proof of claim that presents affirmative evidence of an entitlement to priority. The standards for authorizing a debtor in possession to incur debt under section 364(b) so that it is allowable as an expense of administration under section 503(b)(1) are found in the latter section. Other than certain taxes and tax-related debt under 11 U.S.C. § 503(b)(1)(B) and (C), only the "actual, necessary costs and expenses of preserving the estate" are allowable as administrative expenses. 11 U.S.C. § 503(b)(1)(A).

30. A debtor does not have a duty to explore credit options from every lender before concluding that alternate credit is not available. Courts have held that, provided a debtor's business judgment does not run afoul of the provisions of, and policies underlying, the Bankruptcy Code, courts should grant a debtor considerable deference in accordance with such debtor's desire to obtain post-petition financing. *See e.g. id.*; *In re Ames Dep't Stores, Inc.*, 115 B.R. 34, 40 (Bankr. S.D.N.Y. 1990) ("Cases consistently reflect that the court's discretion under section 364 is to be utilized on grounds that permit reasonable business judgment to be exercised sol long as the financing agreement does not contain terms that leverage the bankruptcy process and powers or

its purpose is not so much to benefit the estate as it is to benefit parties in interest."); *see also In re Farmland Indus. Inc.*, 294 B.R. 855, 881 (Bankr. W.D. Mo. 2003)("[T]he applicable factors can be synthesized as follows…[t]hat the proposed financing is an exercise of sound and reasonable judgment… .").

31. Borrowing pursuant to the term of the proposed Proposed 2021 Premium Finance Agreement and the additional terms contained herein satisfies each of these factors and constitutes sound business judgment. Generally, the business judgment standard requires that, absent evidence to the contrary, a debtor in possession is afforded discretion to act with regard to business decision-making. *See In reSimasko Prod. Co.,* 47 B.R. 444, 449 (Bankr. D. Colo. 1985) ("[D]iscretion to act with regard to business planning activities is at the heart of the debtor's power.") (citations omitted). To determine whether the business judgment standard is met, a court is "required to examine whether a reasonable business person would make a similar decision under similar circumstances." *In re Exide Techs.,* 340 B.R. 222, 239 (Bankr. D. Del. 2006).

32. Newstream LIT seeks to make payments under the Proposed 2021 Premium Finance Agreement as an approved exception to the Debtor's cash collateral budget, used for expenses related to the Debtor that are undoubtedly "actual, necessary costs and expenses of preserving the estate." Further, approval of the Proposed 2021 Premium Finance Agreement under the terms set forth herein will allow the Debtor to maintain sufficient liquidity to preserve its assets over the course of this Chapter 11 case and consummate a plan of reorganization.

33. The Debtor believes that the terms of the 2020 Premium Finance Agreement were commercially fair and reasonable and anticipates the Proposed 2021 Premium Finance Agreement to contain similar terms. Newstream H&H, as manager for both Newstream ABQ and Newstream LIT, is required to maintain adequate insurance coverage for the Properties, and without such

coverage, Newstream ABQ and Newstream LIT would be forced to cease operations.

34. The Debtor seeks to pay the insurance premiums proposed herein as an exception to the current cash collateral budget, attached to the *Amended Agreed Final Order (I) Authorizing the Postpetition Use of Cash Collateral, (II) Granting Adequate Protection to the Prepetition Secured Lender, (III) Scheduling a Final Hearing Pursuant to Bankruptcy Rule 4001(b), and (IV) Granting Related Relief*, entered on September 8, 2021 [Docket No. 93].

35. Based on the foregoing, the Court should authorize the Debtor to renew its property insurance policy, as described herein, and to pay all obligations related thereto as administrative expenses pursuant to 11 U.S.C. § 364(b).

## Immediate Relief and Waiver

36. The Debtor requests a waiver of the (i) notice requirements under Bankruptcy Rules 4001 and 6004(a) and (ii) any stay of the order granting the relief requested herein pursuant to Bankruptcy Rule 6004(h). As explained above, the relief requested herein is necessary to avoid immediate and irreparable harm to the Debtor. Accordingly, ample cause exists to justify the waiver of the notice requirements under Bankruptcy Rules 4001 and 6004(a) and the 14-day stay imposed by Bankruptcy Rule 6004(h), to the extent such stay applies.

## Notice

37. Notice of this Motion has been provided via electronic means and/or via First Class United States Mail to: (a) the Office of the United States Trustee, (b) the Debtor's twenty largest unsecured creditors, (c) counsel to secured lender UC Four Points, and (d) any parties requesting notice of pleadings. In light of the nature of the relief requested in this Motion, the Debtor submits that no further notice is necessary.

WHEREFORE, PREMISES CONSIDERED, the Debtor respectfully requests that the Court enter an order granting the relief requested herein and such other and further relief as the Court may deem proper.

Dated: September 30, 2021.                             Respectfully submitted,

>*/s/ Megan F. Clontz*
>Jason P. Kathman
>State Bar No. 24070036
>Megan F. Clontz
>State Bar No. 24069703
>Misty A. Segura
>State Bar No. 24033174
>Spencer Fane LLP
>5700 Granite Parkway, Suite 650
>Plano, TX 75024
>(972) 324-0300 – Telephone
>(972) 324-0301 – Facsimile
>Email: jkathman@spencerfane.com
>Email: mclontz@spencerfane.com
>Email: msegura@spencerfane.com
>
>**COUNSEL FOR DEBTOR AND DEBTOR-IN-POSSESSION**

### CERTIFICATE OF CONFERENCE

I, the undersigned, hereby certify that Jason Kathman and/or I have, on or before September 30, 2021, conferenced with counsel for UC Four Points and the United States Trustee regarding the relief requested herein. The United States Trustee does not oppose expedited consideration. Terms were discussed telephonically with counsel for UC Four Points, but no indication was given regarding whether or not UC Four Points will opposed the Insurance Finance Motion.

>*/s/ Megan F. Clontz*
>Megan F. Clontz

### CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that, on September 30, 2021, I caused to be served the foregoing Notice on the attached service list via First Class United States Mail, and upon all parties receiving notice via ECF.

>*/s/ Megan F. Clontz*
>Megan F. Clontz