IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | Case No. 21-40561 |
| **NEWSTREAM HOTEL PARTNERS –** | § | |
| **LIT LLC** | § | |
| | § | Chapter 11 |
| Debtor. | § | |

**DEBTOR'S AMENDED MOTION TO RENEW PROPERTY INSURANCE POLICY AND APPROVE POST-PETITION FINANCING PURSUANT TO 11 U.S.C. § 364(c)(2)**

**14-DAY NEGATIVE NOTICE – LBR 4001(a):**

**Your rights may be affected by the relief sought in this pleading. You should read this pleading carefully and discuss it with your attorney if you have one in this bankruptcy case. If you oppose the relief sought by this pleading, you must file a written objection, explaining the factual and/or legal basis for opposing the relief.**

**No hearing will be conducted on this Motion unless a written objection is filed with the Clerk of the United States Bankruptcy Court and served upon the party filing this pleading _WITHIN FOURTEEN (14) DAYS FROM THE DATE OF SERVICE_ shown in the certificate of service unless the Court shortens or extends the time for filing such objection. If no objection is timely served and filed, this pleading shall be deemed to be unopposed, and the Court may enter an order granting the relief sought. If an objection is filed and served in a timely manner, the Court will thereafter set a hearing with appropriate notice. If you fail to appear at the hearing, your objection may be stricken. The Court reserves the right to set a hearing on any matter.**

**EXPEDITED RELIEF HAS BEEN REQUESTED. IF THE COURT CONSIDERS THE MOTION ON AN EXPEDITED BASIS, THEN YOU WILL HAVE LESS THAN 14 DAYS TO ANSWER. IF YOU OBJECT TO THE REQUESTED RELIEF OR IF YOU BELIEVE THAT THE EXPEDITED CONSIDERATION IS NOT WARRANTED, YOU SHOULD FILE AN IMMEDIATE RESPONSE.**

TO THE HONORABLE BRENDA T. RHOADES,
UNITED STATES BANKRUPTCY JUDGE:

Newstream Hotel Partners – LIT, LLC ("**Newstream LIT**" or "**Debtor**"), the debtor and

debtor-in-possession in the above-referenced bankruptcy case, hereby submits this amended motion (the "**Insurance Finance Motion**") and respectfully represents as follows:

### Expedited Relief Requested

1. Pursuant to section 364(c)(2) of the Bankruptcy Code,[1] Rule 4001(c) of the Federal Rules of Bankruptcy Procedure ("**Bankruptcy Rules**"), and Local Bankruptcy Rule 4001-1, the Debtor requests (a) authority to renew its 2020 Property Insurance Policy (as defined herein) for the period of October 8, 2021 through October 8, 2022; (b) authority to obtain post-petition financing in connection with the renewal of its Property Insurance Policy, as set forth herein; and (c) for related relief.

2. Concurrently with its original Insurance Finance Motion, the Debtors request a shortened notice period and an expedited hearing, as the 2020 Property Insurance Policy expires on October 8, 2021, which is less than fourteen (14) days following the filing of the original motion. The Court granted the Debtor's request, and a hearing on the Insurance Finance Motion is set for October 7, 2021 at 1:30 p.m. *See* Docket No. 105.

### Jurisdiction and Venue

3. The Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

4. Venue in this Court is proper pursuant to 28 U.S.C. § 1408.

### Background

**A.     Debtor and Operations**

5. On April 16, 2021 (the "**Petition Date**"), the Debtor filed a voluntary petition for bankruptcy under Chapter 11 of the Bankruptcy Code. The Debtor continues to operate its business

---

[1] 11 U.S.C. §§ 101 *et. seq.*

as a debtor-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. No trustee, examiner, or official committee of unsecured creditors has been appointed.

6. The Debtor owns a full-service hotel, the Four Points Hotel by Sheraton, located at 925 South University Avenue, Little Rock, Arkansas 72204 (the "**Property**"), and conveniently located near the University of Arkansas at Little Rock and Arkansas Children's Hospital. The Property features 263 guest rooms, a restaurant, bar, and 13,786 square feet of meeting and event space, as well as an outdoor pool with waterfall and splash pad, fitness center, business center, and other amenities consistent with a midscale full-service hotel. Originally opened as a Hilton hotel in 1978, the Property includes approximately $28 million in recent renovations and is in excellent physical condition. Debtor purchased the Property in 2018 for approximately $17,002,000.00.

7. Additional information regarding the Debtor and its chapter 11 filing, including the Debtor's business operation, capital structure, financial condition, and the reasons for and objective of this chapter 11 case, is set forth in the Nystrom Declaration [Docket No. 3], incorporated herein by reference.[2]

8. On April 22, 2021, the Debtor filed its *Motion for Order Authorizing the Debtor to Maintain Insurance Policies* [Docket No. 28] (the "**Insurance Motion**"), which was granted by the Court on May 5, 2021 [Docket No. 41].

**B.    The 2020 Property Insurance Policy**

9. The Debtor is named as an additional insured and the Property is insured under a property casualty policy (the "**2020 Property Insurance Policy**"), effective from October 8, 2020 through October 8, 2021, in which the Property is bundled with the property owned by Newstream

---

[2] Capitalized terms used but not otherwise defined in this Motion shall have the meaning ascribed to them in the Nystrom Declaration.

**DEBTOR'S AMENDED MOTION TO RENEW PROPERTY INSURANCE POLICY
AND APPROVE POST-PETITION FINANCING PURSUANT TO 11 U.S.C. § 364(b)         PAGE 3**

Hotel Partners – ABQ, L.P. ("**Newstream ABQ**")[3], for which the Debtor's manager, Newstream Hotels & Hospitality, LLC ("**Newstream H&H**," and collectively with Newstream LIT and Newstream ABQ, the "**Newstream Entities**")[4], is also the manager and General Partner. Newstream H&H financed the purchase of the 2020 Property Insurance Policy pursuant to a premium finance agreement (the "**2020 Premium Finance Agreement**") with FIRST Insurance Funding, a Division of Lake Forest Bank & Trust Company, N.A. ("**FIRST**"), which required nine (9) monthly payments of $8,086.40, due on the eighth day of each month, paid directly to FIRST by Newstream LIT and Newstream ABQ based on each entity's *pro rata* portion of the premiums financed, plus taxes and fees. Specifically, the 2020 Premium Finance Agreement provided for $87,850.00 in total premiums, taxes, and fees and $2,497.60 in finance charges, at an annual interest rate of 8.450%, of which $73,569.00 was attributable to the premiums associated with the Property owned by Newstream LIT.

10. Debtor's Prepetition Secured Lender, UC Four Points Little Rock Holder, LLC ("**UC Four Points**"), is listed as an additional insured on the 2020 Property Insurance Policy, and proof of the same has been provided to UC Four Points.

11. As of July 2020, and prior to the filing of bankruptcy cases by Newstream ABQ and Newstream H&H, all payments were made by Newstream LIT and Newstream ABQ under the 2020 Premium Finance Agreement, and no further amounts are owed by the Newstream Entities under the 2020 contracts.

---

[3] Newstream Hotel Partners – ABQ, L.P. is the debtor in Chapter 11 Case No. 21-41212, filed on August 30, 2021 and currently pending in the Bankruptcy Court for the Eastern District of Texas, Sherman Division.

[4] Newstream Hotels and Hospitality, LLC is the debtor in Chapter 11 Case No. 21-41213, filed on August 30, 2021 and currently pending in the Bankruptcy Court for the Eastern District of Texas, Sherman Division.

**C.     The Proposed 2021 Property Insurance Policy**

12.     The Newstream Entities seek to renew their property insurance coverage under the terms set forth in **Exhibit A** (the "**Proposed 2021 Property Insurance Policy**"), which includes the bundling of insurance coverage for the properties owned and operated by Newstream LIT and Newstream ABQ (collectively, the "**Properties**"). Such bundling allows the Newstream Entities to insure the smaller Newstream ABQ property under the current circumstances.

13.     Under the Proposed 2021 Property Insurance Policy, Newstream LIT and Newstream ABQ would pay a collective total annual insurance premium of $117,968.12 for insurance coverage effective from October 8, 2021 through October 8, 2022, covering each building, business personal property contained therein, and business income related to each, with extensions for flood, earth movement, water, wind, and other events, at the same or similar coverage amounts included in the existing 2020 Property Insurance Policy.[5] The amounts attributable to each property under the Proposed 2021 Property Insurance Policy are approximately $102,279.12 (86.7%) to Newstream LIT and $15,689.00 (13.3%) to Newstream ABQ.

**D.     The Proposed DIP Financing**

14.     Newstream LIT seeks to incur debt to purchase its pro-rata portion of the Proposed 2021 Property Insurance Policy, pursuant to 11 U.S.C. § 364(c)(2).

15.     Specifically, Newstream LIT seeks to finance amounts due under the Proposed 2021 Property Insurance Policy under a finance agreement with its secured lender, UC Four Points, whereby UC Four Points will loan to Newstream LIT an amount equal to Newstream LIT's pro rata share of the Proposed 2021 Property Insurance Policy, $102,279.12, on or before the effective

---

[5] The stated premium includes a deductible buy down premium of $21,583.12 related to wind coverage for the Property, reducing the related deductible amount from $500,000.00 to $250,000.00.

date of the policy, with a down payment and nine monthly payments to be made by Newstream LIT to UC Four Points (the "**Insurance Loan**"). Additional terms of the Insurance Loan between the Debtor and UC Four Points are set forth in the proposed order attached hereto as **Exhibit B.**

16. As collateral to secure the repayment of the total of payments under the Insurance Loan, Newstream LIT will grant to UC Four Points a security interest in the unearned insurance premiums, any credits generated by the 2021 Property Insurance Policy, dividend payments, and loss payments which reduce the unearned premium.

17. UC Four Points shall also be listed as a loss-payee on the 2021 Property Insurance Policy as to the Property owned by Newstream LIT.

18. The relief requested by this Insurance Finance Motion is warranted and appropriate under the circumstances. The Debtor submits that authorization of the proposed loan will ensure that Newstream LIT can continue necessary operations and will not prejudice the legitimate interests of creditors and other parties in interest, including secured creditors of Newstream LIT.

## BASIS FOR RELIEF REQUESTED

### A. Payment of the Obligations Related to the Insurance Policies is Required by the Bankruptcy Code and U.S. Trustee.

19. The Debtor's insurance policies are essential to preserve the value of the Debtor's business, properties and assets. Not only are insurance policies likely required by various regulations, laws, and contracts that govern the Debtor's commercial activities, but section 1112(b)(4)(C) of the Bankruptcy Code provides that "failure to maintain appropriate insurance that poses a risk to the estate or to the public," is "cause" for mandatory conversion or dismissal of a chapter 11 case. *See* 11 U.S.C. § 1112(b)(4)(C). Moreover, the Operating Guidelines for Chapter 11 Cases of the Office of the United States Trustee also require debtors to maintain

insurance coverage through the pendency of chapter 11 cases.

20. Courts routinely approve the request for the payment of insurance premiums similar to the relief requested in this Motion. *See, e.g., In re Alco Stores, Inc.*, Case No. 14-34941 (SGJ)(Bankr. N.D. Tex. Sept. 14, 2014)(authorizing debtors to continue to their prepetition insurance policies, make annual and monthly premium payments in the ordinary course of business, and maintain funding for certain insurance brokers); *In re Idearc Inc.*, Case No. 09-31828 (BJH)(Bankr. N.D. Tex. April 6, 2009)(same); *In re Pilgrim's Pride Corp.*, Case No. 08-45664 (DML)(Bankr. N.D. Tex. Dec. 3, 2008)(same); *In re Renaissance Hosp. Grand Prairie, Inc.,* Case No. 08-43775 (DML)(Bankr. N.D. Tex. Sept. 4, 2008)(same); *In re Home Interiors & Gifts, Inc.*, Case No. 08-31961 (BJH)(Bankr. N.D. Tex. June 6, 2008)(same).

**B. Payments to Maintain the Insurance Policies are Ordinary-Course Transactions Authorized Pursuant to Section 363(c)(1) of the Bankruptcy Code.**

21. The Debtor believes that payments made to maintain or renew its property insurance policy, as well as the payments of any obligations made in connection therewith, fall within the ordinary course of business and are therefore authorized pursuant to section 363(c)(1) of the Bankruptcy Code.

22. Section 363(c)(1) of the Bankruptcy Code authorizes the debtor in possession to "use property of the estate in the ordinary course of business without notice or a hearing." *See* 11 U.S.C. § 363(c)(1). The purpose of section 363(c)(1) is to provide a debtor in possession with the flexibility to engage in the ordinary transactions required to operate its business without unneeded oversight by its creditors or the court. *See Med. Malpractice Ins. Ass'n v. Hirsch (In re Lavigne)*, 114 F.3d 379, 384 (2d Cir. 1997); *Chaney v. Official Comm. of Unsec'd Creditors of Crytal Apparel, Inc. (In re Crystal Apparel, Inc.)*, 207 B.R. 406, 409 (S.D.N.Y. 1997).

23. Here, maintaining the insurance policies and honoring the obligations arising thereunder, including undertaking renewals of the insurance policies as they expire or entering into new insurance arrangements through any of the Debtor's insurance brokers, are the type of ordinary-course transactions contemplated by section 363(c)(1). Accordingly, section 363(c)(1) authorizes continuation of the insurance policies without this Court's approval.

C. **The Doctrine of Necessity Provides Support for Payment of the Obligations Related to the Insurance Policies.**

24. As explained above, the Debtor believes that payments made to maintain the insurance policies, as well as any obligations related to the insurance policies, fall within the ordinary course of business and are therefore authorized pursuance to section 363(c)(1) of the Bankruptcy Code. To the extent that any such actions do not constitute ordinary-course transactions, however, the Debtor requests the Court authorize the Debtor to continue payments for the insurance policies, pursuant to section 105(a), 363(b), and 503(b) of the Bankruptcy Code.

25. Section 363(b) of the Bankruptcy Code provides: "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." *See* 11 U.S.C. § 363(b). Further, pursuant to section 1107(a) of the Bankruptcy Code, a debtor in possession has, among other things, the "implied duty of the debtor-in-possession to 'protect and preserve the estate, including an operating business' going-concern value.'" *In re CEI Roofing, Inc.*, 315 B.R. 50, 59 (Bankr. N.D. Tex. 2004)(*citing In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002)). Under section 105(a) of the Bankruptcy Code, "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). *See* 11 U.S.C. § 105(a).

26. The Debtor's use of estate funds and/or cash collateral to pay obligations arising

from the insurance policies is justified because such obligations are necessary costs of preserving the Debtor's estate. The insurance policies are essential to the Debtor's operations, as the Debtor would be exposed to significant liability if the insurance policies were allowed to lapse or terminate. Such exposure could detrimentally impact the Debtor's ability to reorganize. Furthermore, as explained above, the Bankruptcy Code and United States Trustee guidelines require maintenance of insurance.

### D. Financing of the Insurance Premiums is Necessary to the Debtor's Restructure and Authorized by the Bankruptcy Code

27. Section 364(b) Bankruptcy Code provides that "[t]he court, after notice and a hearing, may authorize the trustee to obtain unsecured credit or to incur unsecured debt other than under subsection (a) of this section, allowable under section 503(b)(1) of this title as an administrative expense." *See* 11 U.S.C. § 364(b). An authorization of credit under 11 U.S.C. § 364(b) establishes a safe haven wherein a prospective lender receives assurance of an administrative priority. By its language, section 364(b) allows the court to authorize a debt that will be "allowable under section 503(b)(1) as an administrative expense." Although providing a guaranteed pathway to priority, section 364(b) imposes no negative restraint on the opportunity to establish an entitlement to priority under section 503(b)(1). Even when the debtor fails to secure prior authorization for a post-petition extension of credit outside the ordinary course of business, the lender may still file a proof of claim that presents affirmative evidence of an entitlement to priority. The standards for authorizing a debtor in possession to incur debt under section 364(b) so that it is allowable as an expense of administration under section 503(b)(1) are found in the latter section. Other than certain taxes and tax-related debt under 11 U.S.C. § 503(b)(1)(B) and (C), only the "actual, necessary costs and expenses of preserving the estate" are allowable as administrative

expenses. 11 U.S.C. § 503(b)(1)(A).

28. Section 364(c) of the Bankruptcy Code provides that, "[i]f the trustee [or debtor in possession] is unable to obtain unsecured credit allowable under section 503(b)(1) of this title as an administrative expense, the court, after notice and a hearing, may authorize the obtaining of credit or the incurring of debt … secured by a lien on property of the estate that is not otherwise subject to a lien." 11 U.S.C. § 364(c). Newstream LIT has explored financing options for insurance premiums. FIRST, its pre-petition insurance lender, stated that it would be willing to provide post-petition lending *to existing customers only*, subject to its standard terms and security requirements. UC Four Points, the Debtor's current secured lender, chose to finance the insurance premium with more favorable terms, and the Debtor seeks to obtain its loan through UC Four Points.

29. A debtor does not have a duty to explore credit options from every lender before concluding that alternate credit is not available. Courts have held that, provided a debtor's business judgment does not run afoul of the provisions of, and policies underlying, the Bankruptcy Code, courts should grant a debtor considerable deference in accordance with such debtor's desire to obtain post-petition financing. *See e.g. id.*; *In re Ames Dep't Stores, Inc.*, 115 B.R. 34, 40 (Bankr. S.D.N.Y. 1990) ("Cases consistently reflect that the court's discretion under section 364 is to be utilized on grounds that permit reasonable business judgment to be exercised sol long as the financing agreement does not contain terms that leverage the bankruptcy process and powers or its purpose is not so much to benefit the estate as it is to benefit parties in interest."); *see also In re Farmland Indus. Inc.*, 294 B.R. 855, 881 (Bankr. W.D. Mo. 2003)("[T]he applicable factors can be synthesized as follows…[t]hat the proposed financing is an exercise of sound and reasonable judgment… .").

30. Borrowing from UC Four Points, pursuant to the terms set forth herein, satisfies

each of these factors and constitutes sound business judgment. Generally, the business judgment standard requires that, absent evidence to the contrary, a debtor in possession is afforded discretion to act with regard to business decision-making. *See In re Simasko Prod. Co.,* 47 B.R. 444, 449 (Bankr. D. Colo. 1985) ("[D]iscretion to act with regard to business planning activities is at the heart of the debtor's power.") (citations omitted). To determine whether the business judgment standard is met, a court is "required to examine whether a reasonable business person would make a similar decision under similar circumstances." *In re Exide Techs.,* 340 B.R. 222, 239 (Bankr. D. Del. 2006).

31. Newstream LIT seeks to make payments to UC Four Points as an approved exception to the Debtor's cash collateral budget, used for expenses related to the Debtor that are undoubtedly "actual, necessary costs and expenses of preserving the estate."

32. The Debtor believes that the terms of the Insurance Loan between Debtor and UC Four Points are commercially fair and reasonable. Newstream LIT is required to maintain adequate insurance coverage, and without such coverage, Newstream LIT would be forced to cease operations.

33. The Debtor seeks to pay the insurance premiums proposed herein as an exception to the current cash collateral budget, attached to the *Amended Agreed Final Order (I) Authorizing the Postpetition Use of Cash Collateral, (II) Granting Adequate Protection to the Prepetition Secured Lender, (III) Scheduling a Final Hearing Pursuant to Bankruptcy Rule 4001(b), and (IV) Granting Related Relief*, entered on September 8, 2021 [Docket No. 93].

34. Based on the foregoing, the Court should authorize the Debtor to renew its property insurance policy, as described herein, to incur debt in connection therewith, and to pay all obligations related thereto pursuant to 11 U.S.C. § 364.

**Immediate Relief and Waiver**

35. The Debtor requests a waiver of the (i) notice requirements under Bankruptcy Rules 4001 and 6004(a) and (ii) any stay of the order granting the relief requested herein pursuant to Bankruptcy Rule 6004(h). As explained above, the relief requested herein is necessary to avoid immediate and irreparable harm to the Debtor. Accordingly, ample cause exists to justify the waiver of the notice requirements under Bankruptcy Rules 4001 and 6004(a) and the 14-day stay imposed by Bankruptcy Rule 6004(h), to the extent such stay applies.

**Notice**

36. Notice of this Insurance Finance Motion has been provided via electronic means and/or via First Class United States Mail to: (a) the Office of the United States Trustee, (b) the Debtor's twenty largest unsecured creditors, (c) counsel to secured lender UC Four Points, and (d) any parties requesting notice of pleadings. In light of the nature of the relief requested in this Motion, the Debtor submits that no further notice is necessary.

WHEREFORE, PREMISES CONSIDERED, the Debtor respectfully requests that the Court enter an order granting the relief requested herein and such other and further relief as the Court may deem proper.

Dated: October 7, 2021.　　　　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　　　　*/s/ Megan F. Clontz*
　　　　　　　　　　　　　　　　　　　　　　　Jason P. Kathman
　　　　　　　　　　　　　　　　　　　　　　　State Bar No. 24070036
　　　　　　　　　　　　　　　　　　　　　　　Megan F. Clontz
　　　　　　　　　　　　　　　　　　　　　　　State Bar No. 24069703
　　　　　　　　　　　　　　　　　　　　　　　Misty A. Segura
　　　　　　　　　　　　　　　　　　　　　　　State Bar No. 24033174
　　　　　　　　　　　　　　　　　　　　　　　Spencer Fane LLP
　　　　　　　　　　　　　　　　　　　　　　　5700 Granite Parkway, Suite 650
　　　　　　　　　　　　　　　　　　　　　　　Plano, TX 75024
　　　　　　　　　　　　　　　　　　　　　　　(972) 324-0300 – Telephone
　　　　　　　　　　　　　　　　　　　　　　　(972) 324-0301 – Facsimile
　　　　　　　　　　　　　　　　　　　　　　　Email: jkathman@spencerfane.com
　　　　　　　　　　　　　　　　　　　　　　　Email: mclontz@spencerfane.com
　　　　　　　　　　　　　　　　　　　　　　　Email: msegura@spencerfane.com

　　　　　　　　　　　　　　　　　　　　　　　**COUNSEL FOR DEBTOR AND**
　　　　　　　　　　　　　　　　　　　　　　　**DEBTOR-IN-POSSESSION**

## **CERTIFICATE OF CONFERENCE**

I, the undersigned, hereby certify that Jason Kathman and/or I have, on or before October 7, 2021, conferenced with counsel for UC Four Points and the United States Trustee regarding the relief requested herein. The United States Trustee does not oppose expedited consideration. UC Four Points does not oppose expedited consideration and has agreed to the terms proposed in this Insurance Finance Motion.

　　　　　　　　　　　　　　　　　　　　　　　*/s/ Megan F. Clontz*
　　　　　　　　　　　　　　　　　　　　　　　Megan F. Clontz

## **CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that, on October 7, 2021, I caused to be served the foregoing Notice on the attached service list via First Class United States Mail, and upon all parties receiving notice via ECF.

　　　　　　　　　　　　　　　　　　　　　　　*/s/ Megan F. Clontz*
　　　　　　　　　　　　　　　　　　　　　　　Megan F. Clontz